Case number 23-50-74, Mohamed Jibril, individually and on behalf of their minor children, H.J. and O.J. Adah, at balance, versus Alejandro Mayorkas in his official capacity as Secretary of the Department of Homeland Security, Adah. Ms. Jump, for the at balance, Mr. Waldman, for the affiliates. Thank you, your, thank you, your honors. May it please the court, I'm Christina Jump, and along with my colleague, Chelsea Glover, I am here once more on behalf of the seven members of the Jibril family. This court held that ex parte in-camera resolution of dispositive issues should be avoided whenever possible. That instruction was issued by this court in Ellsberg v. Mitchell and remains true today. In this case, resolution at the Rule 12 stage, based solely on ex parte in-camera submissions of a factual challenge, in particular, most certainly could have been avoided, but the district court failed to do so, despite its express reservations and recognition that the government has not entirely explained why national security concerns exist in this particular case, particularly with respect to the minor plaintiffs. We represent that that was error and ask that this court reverse that holding and remand back to the district court. What did the department say about the minor plaintiff? I'm sorry? What did the department say in this recent letter about the minor plaintiff? The department, the government, what does the government say? Your honor, honestly, I don't know. That's part of the problem. There's not much that we can say, that we can see, that has been submitted this time that is not in-camera. I will say that we are aware that minor OJ, one of the youngest of the Jabril family members, originally received a separate and distinctly different letter in response to the DHS trip complaint. On behalf of him, Van did the other five members of the Jabril family that did receive letters as well. So if I received the more standard, can neither confirm nor deny letter, and OJ received a different one with different wording that also did not identify anything, but did diverge from the one that the other five received. And the seventh member of the family never received a letter from DHS trip. Based on that- I've seen the letter concerning the minor, correct? I've seen the letter that was issued by DHS trip, yes. Okay, and you still haven't told me what it says. Oh, I'm sorry, your honor. The letter issued by DHS trip, the language that differs as to minor OJ is that it does not contain the language that DHS trip can neither confirm or deny any information about you, which may be within the federal watch list or reveal any law enforcement sensitive information. That is language that was in the other five, was not in his. Instead, minor OJ's letter contains the information, it contains the language that the U.S. government has completed our review of your case. Your experience was most likely caused by a misidentification against a government record or by random selection. We regret any inconvenience you may have experienced and where appropriate have made updates to our records that may assist in avoiding future incident of misidentification. Thank you. Based on the fact that there is at least that distinction and the motion to dismiss at the district court level this round, as well as the district court's holding or the district court's decision, its order in this case, do not address that distinction, even following the hypothetical presented in the district court's opinion, which is all I can do, following that hypothetical, even under that, the hypothetical that if, hypothetically, one member of the family, say the father, were on the watch list and other family members traveling with him then experienced the same issues, and then he were removed from the watch list, and hypothetically, they would not have any future problems. That does not explain the distinction between the letters that were received by the individuals. There were other minors, so the minor status does not explain that either, and it does not explain why the seventh member of the Jabril family did not get a letter from DHS TRIP at any point. The district court opinion also fails to address, as does the motion for summary judgment, the fact that, as this court previously recognized, the Jabrils have an interest in religious travel and traveling internationally to Saudi Arabia for their sincerely held, excuse me, religious beliefs, and the district court's decision does not address the facial challenge that we bring to the DHS TRIP redress process through the regulations at 49 CFR 1560 dash, oh, sorry, 1560.205. That was not addressed by the district court. The claimants remain subject to DHS TRIP, whether they're on the selectee list or not. Anytime that they travel, DHS TRIP process applies to all travelers, not just those on the selectee list, as my colleague across the aisle made clear last time that we were here in 2021, that multiple individuals not on the selectee list may receive the Quad S designation and additional security screening, and their only redress as well is a DHS TRIP process. So the Jabrils remain subject to it, much like in the case of Enrique Navy Chaplaincy, they're still subject to the same processes, and it is still relevant then to their- What is your proposed redress? What we, at this stage, Your Honor, what we request is reband, first of all, so that we can finally file that amended complaint, and also that we may seek, which we have not had the opportunity yet to file, despite having requested at the district court this time, with edits that will reflect what we believe, or at least suspect, to be the factual challenge presented at this time, and that we also would, for redress, would like to have either an unclassified summary presented to the Jabrils, which the government does in the context of no-fly situations, it could do here, or the court, the district court, can provide the Jabrils with some information to allow them a meaningful opportunity, in a meaningful way, to challenge whatever was presented to them that would be redacted, could be presented for attorney's eyes only, courts have many avenues at their disposal, other than simply making it all in camera, we do, again, challenge, we have the facial challenge to the DHS TRIP procedures, and what we believe to be the lack of due process, of constitutional due process contained within those, and this case is a prime example of why, and we would like the opportunity to litigate that at the district court below, while there may be some limitations on what we can see, there may be some limitations. I'm trying to figure out, there are some limitations, there's sovereign immunity concerns, with respect to whomever it is you're suing, at least the way the case sets up now, are you talking about damages, and based on what, what theory? I'm talking about two things. I'm trying to understand what it is, Yes your honor. You're proposing. I'm talking about two things your honor, first that we would like to, either have the opportunity for jurisdictional discovery, which we asked for in our briefing, in order to determine any individual agents, who may be liable for the past harm, or past damages that we can name individually, we just don't have that information yet, but did add in the, Whoever asked for that? We added in, we haven't had an opportunity to request it, we did put in the proposed amended complaint, it requests for nominal damages as relief, and we did say in our briefing, here to this court, that we would, and to the district court, in footnotes in our response, that we wanted, we did request the opportunity to amend, or to finalize the proposed amended complaint, after having an opportunity to investigate further, based on the factual challenge, and our limitations of trying to go at it, mostly blindly, in order to address it. We may not be able to do that, but we want the opportunity. What do you perceive to be your basis for standing, at this point as best you understand the case? As I understand the case your honor, first of all, we would like to amend to add nominal damages, again, as to individual agents, in their individual capacity, to the extent that we are able to identify those reasonably, or be allowed a jurisdictional discovery, to find that information. Retrospective or prospective relief? That part would be retrospective, and then prospectively, because the Jabril's all remain subject to, the DHS trip process for future travel, and they have shown, as this court previously recognized, that they will travel in the future, are reasonably likely to travel in the future, for both family and religious needs, that they are still subject to that, so we are seeking in that sense, a declaratory relief regarding the constitutionality, that we believe is deficient, of the DHS trip redress process, as it currently exists. Taking the district courts hypothetical, as using it as a question, if things are as the district court, in the district court, if things are as the district courts, hypothetical raise, what standing do you have, based on the work? Yeah, I believe that. We're going forward. Yes, we're going forward your honor, we believe that we do still have standing, in that context, in that, the using the parallel, of the voluntary cessation standard, and the language that was addressed, in the Kovacs case, which is cited, as well as to the vote versus IRS, which is cited in our briefing, that the defendants own choice, to state trust us this won't happen again, is not sufficient, that is not a sufficient reason, and believe and understanding to say, there is no chance of this happening again, regarding a procedure, that every traveler is subject to using, should any traveler have a complaint going forward, so we do not believe, we don't agree with the district court's holding, to the extent that we can see the reasoning for it. Does it matter whether any of the plaintiffs, have ever been on a list? I believe it matters, I don't believe that it's purely dispositive, I believe that it is one indication, but again, as I indicated, they are also all still subject, to the DHS trip process for the. Isn't that's a high amount of decline, isn't the light of the case law, and a lot of the statute, respect what the government is allowed to do. The government has a lot of. We're all subject to that. We are, and I believe that the Jibril's have shown, based on how they've been treated in the past, and based on their demonstrated likelihood, of repeat travel in the future, and the fact that the, neither the district court holding, or the from what I can see, the government's submitted factual challenge, at the 12v1 stage, none of that addresses the distinctions that do exist, for example, with the letter to young OJ, and as well as the failure to even issue, a letter to the seventh Jibril family member, those have not been identified. Those have not been fleshed out. So I, from what I see, I don't see a resolution to all of the questions. They may still be subject. And again, it is at the government's discretion, to put them back on at any time. And if there is information that is so compelling, and so dispositive, that it could have prevented this lawsuit five years ago, at the very least, the Jibril should be able to see, an unclassified summary of that information. It may be that we can't get past that. It may be that that kills our facial challenge, but we should have the opportunity, and they deserve the right, to a day in court to litigate that fully, and brief it fully. Well, the district court in the hypothetical, suggested that some of what you're, raising now may depend upon, whether any of the plaintiffs were on a list, at the time the fight of the complaint was filed. I did see that it suggested that. That changes the analysis from standing, that changes the analysis, that you wanna raise about moodiness, to one about standing. Your honor, I do believe again, they did experience all seven of them, experienced this treatment, regardless of however many, may or may not have been on the watch list, at that time, or at the time of filing the complaint. All seven of them, are still subject to DHS trip, as their only remedy, and all seven of them have a demonstrated, likelihood of traveling again in the future, and therefore potentially being subject to this arm. I don't see anything from what I can see, and I recognize my limitations here. I don't see anything that addresses that, as to all seven family members going forward, and quite frankly, neither for the district court, as it recognized that the government, had not shown in this particular case, and particularly as to the minor plaintiffs, that the national security justification, rises to the level of the extraordinary circumstances, and the closer inspection necessary, to justify purely in-camera ex parte presentation, particularly of a factual challenge, and at the 12.1 stage, when all factual inferences should be resolved, in favor of the plaintiffs. Unless there are any other questions at this time, I will sit down, and allow my colleague from across the aisle to speak, and hopefully be back briefly for rebuttal. Thank you. Thank you. Thank you. Mr. Waldman, before you began. All right, Mr. Waldman, come on up to the podium. Do you intend in your argument, to use any information for which we need a closed session? Not in this public session, Your Honor, no. Would you like me to proceed, Your Honor? Yes. Thank you. Good morning, I'm Joshua Waldman, from the Department of Justice for the Appellees. The District Court correctly held, on the basis of the government's ex parte declaration, that it lacked Article III jurisdiction, over plaintiff's claims. The District Court may properly consider matters, outside of the pleading, in resolving a motion to dismiss, for lack of jurisdiction. And this court has held, that it may resolve a case on the basis, of an ex parte evidence, where is here relevant privilege is properly invoked. There is a compelling national security concern, and the government has disclosed, as much as possible without compromising the privilege. District Court did not abuse its discretion, in denying a motion to amend the complaint, because the plaintiffs did not identify any basis, for waiving sovereign immunity, that would permit them to add a claim, for monetary damages. To begin with a return to the jurisdictional point, based on the ex parte declaration, the District Court held, that there was quote, no conceivable way, that the plaintiffs could demonstrate, that they have standing or Article III jurisdiction, even with a full opportunity, for adversarial testing of the government's position. We think that that should be conclusive, of the Article III jurisdiction, jurisdictional question in this case. If the court has any questions about the public record, I'd be happy to. We do have questions, but we need to close. Sure, okay. Your honors with the brief time, that I have remaining to wrap up, I do wanna point out in response to one thing, that my colleague across the aisle said, there is a difference between considering, evidence that is outside the record, and considering only evidence, that is outside the record presented ex parte, and in camera, and doing so contradicts this court's holding, in the cases that we've cited already, as well as a Boris could be Reagan, from, 1996, where this court stated that in some, we expect the District Court on remand, to be mindful of the tight boundaries, set in malaria, and of the overriding importance, of it during plaintiff's receipt, of the most complete information, and explanation permissible. It did not happen here, that is what we are requesting, is that we have that opportunity on remand, even with the proposed amended complaint, which we specifically noted in our response, to the District Court in the footnotes, was not intended to be a final version or complete, because we knew we'd have to figure out, how to respond to what we did not know, but even with that, it is not like the situation in the Robinson case, which the government cites to, where there were no new claims or no new relief added, we did, and we also want to add potentially new parties, of the individual agents, as well as additional facts, to address best as we can, what we now know or believe from the hypothetical, to be the factual challenge that has been asserted. Failure to remand for at least that right to amend, and to allow full briefing on the viability, of that eventual amended complaint, which we had not had the opportunity to create or file yet, would reward the defendant's actions, that the District Court described, as an apparently sick sense of delight, as noted by the District Court, in waiting years after having known this information, that it believes to be central, and still withholding it from the Jabril family. Courts can create and fashion alternative remedies, to protect material, and that can happen here, it has not, and we ask this court to allow for that to happen. Thank you, your honors. Thank you. Thank you. Thank you.
judges: Henderson, Edwards, Ginsburg